## Norcini v. St. Paul Mercury Insurance Co.

*Thomas S. Myers Jr.,* for plaintiff.
*James C. Haggerty,* for defendant.

FITZPATRICK, *J.,* July 20, 1992—On July 2, 1991, David Norcini filed a petition to enforce and compel settlement against St. Paul Mercury Insurance Co. An answer was filed which contained a counterclaim for declaratory and injunctive relief. Norcini subsequently answered the counterclaim and St. Paul joined Pennsylvania Manufacturer's Assurance Co. as an additional defendant.

Argument and hearing was conducted on the petition to enforce settlement on December 16, 1991. Testifying were Ms.. Sharon Dawson-Coates, senior claim representative for St. Paul Insurance Co., Thomas S. Myers Jr., counsel for David Norcini, and James C. Haggerty, counsel for St. Paul Mercury Insurance Co. The parties stipulated to testimony of Myrna Sears, vice-president of Condon & Skelly, an insurance agency and James Donohue, personal lines manager of Rollins Verdick Hunter Inc., an insurance agency. Submitted into evidence were 19 exhibits which consisted of the communications be-

tween counsel for plaintiff and the senior claims representative for St. Paul.

The facts established at the hearing, are for the most part, undisputed. On or about August 29, 1987, Mr. David Norcini, a volunteer for the Radnor Township Fire Department, was driven off the roadway by another vehicle while responding to a call. He was operating a vehicle owned by his father which was insured on the Norcini Auto Body business policy through General Accident. The policy insured nine vehicles. Mr. Norcini was residing with his parents at the time of the accident and had secondary coverage pursuant to his father's antique car policy issued by the respondent herein, St. Paul Mercury Insurance Co. Not involved at this time is Pennsylvania Manufacturer's Assurance Co., which provides some coverage for Radnor Township.

In October 1987, counsel for plaintiff notified General Accident and St. Paul Mercury Insurance Co. of the accident. Counsel for plaintiff was under the belief that there were five vehicles insured on the business policy at limits of $35,000 per vehicle. The claims rep. for St. Paul was under the impression at that time that there was only one car insured at $35,000 on that policy with $1 million for ABI or Automobile Liability Limit.

After initial communications in 1987 between plaintiff and St. Paul, discussions did not resume until November 1990.

During the interim, counsel for plaintiff negotiated settlement with General Accident on the business policy. Counsel for plaintiff argued that five cars were used for "personal use" which would have provided coverage ($35,000 per car) in the amount of $175,000 per stacking.

Affidavits and depositions were conducted wherein plaintiff represented that five cars were used for personal use. Subsequently, plaintiff lowered their demands by increments of $35,000 for a settlement in the amount of $70,000 with General Accident. It should be noted that counsel for General Accident at that time was James Haggerty, Esquire, counsel for St. Paul Mercury herein. As the $70,000 amount was finalized, counsel for plaintiff asked for a letter from General Accident representing that the policy limits had been exhausted. General Accident complied with a letter stating that the policy limits had been exhausted for two automobiles. No mention was made in the letter of remaining vehicles in the policy.

As discussions resumed between St. Paul and plaintiff in November 1990, St. Paul, for the first time, became aware that there was more than one car on the General Accident policy. The senior claims representative testified she was "surprised" that the matter resolved itself for $70,000, higher than coverage for one car. A demand was made in the amount of $50,000, by plaintiff, against St. Paul which constituted St. Paul's policy's limits. On or about March 4, 1991, the senior claim representative for St. Paul was informed by a General Accident claim representative that the case had been settled for $70,000 which exhausted two vehicles coverage. After posturing between the parties, the sum of $60,000 was agreed on March 11, 1991, as payment for the claim being made by the plaintiff herein. On March 18, 1991, Ms. Dawson-Coates, the claim representative for St. Paul, requested the declaration sheet for the General Accident policy to insure that there were only two scheduled autos on that policy which would constitute an exhaustion of full policy limits. Counsel for plaintiff, in a subsequent phone con-

versation, informed St. Paul that five vehicles were on the policy but that only two were for personal use and that the General Accident policy was exhausted under Pennsylvania law.

Finally, a declaration sheet was received which made St. Paul aware, for the first time, that there were nine automobiles insured on the General Accident policy. Counsel for plaintiff informed this court that he was not aware that nine vehicles were on the General Accident policy until 10 days before the date of this court's hearings in December 1991.

As stated earlier herein, the above facts for the most part are not in dispute.

Challenged and contested by the parties is the testimony of the senior claims rep. for St. Paul that although the sum of $40,000 was offered and accepted as full and final settlement that:

"[I]t is not reflected on the memo that, Mr. Myers, this is an excess situation. GA was clearly the primary carrier, and in order to get any layer above the primary, meaning excess, you have to make sure that the primary limits have been exhausted." (N.T. p. 14)

Ms. Dawson-Coates added "that was to end the case, but again it's contingent upon the fact that the primary limits have been exhausted." (N.T. p. 18).

At issue in this case, then is the testimony of St. Paul that although the sum of $40,000 was offered and accepted, the amount was contingent upon the receipt of proof that the underlying policy had been exhausted. It is not disputed that this contingency was unvoiced in the March 11, 1991, settlement phone conference. However, St.

Paul argues that the industry practice is to have such proof established before final settlement.

A settlement agreement is enforceable and legally binding. This is true, even without written confirmation of same. *Kazanjian v. New England Petroleum Corp.*, 332 Pa. Super. 1, 480 A.2d 1153 (1984). In *Kazanjian,* the court stated:

"Moreover, it is well settled in Pennsylvania that where the parties *have settled upon the essential terms* and the only remaining act to be done is the formalization of the agreement, the latter is not inconsistent with the present contract. *Melo-Sonicks Corp. v. Cropp,* 342 F.2d 856, 859-60 (3rd Cir. 1965); *Field v. Golden Triangle Broadcasting Corp.,* 451 Pa. 410, 305 A.2d 689 (1973)." *Kazanjian, 480 A.2d at 1157. (emphasis added)*

This court, after hearing and subsequent review of memorandum submitted by counsel and precedent contained therein, finds that the settlement between the parties is not enforceable because a question still remains at this time, as to whether or not the underlying policy was exhausted. To amplify our conclusion, it remains for plaintiff to establish through this or separate proceedings that payment of policy limits on two of the nine vehicles on the General Accident policy constitutes exhaustion under Pennsylvania Law. The senior claims adjuster for St. Paul was operating pursuant to representations by General Accident and plaintiffs counsel that the policy had been exhausted by payment of $70,000. Such representations did not disclose the remaining seven vehicles on that policy. At the time the settlement agreement was reached between the parties, an element of that agreement was the understanding that the General Accident policy had been properly exhausted.

The declaratory judgment actions filed St. Paul in its counterclaim remains outstanding. We do not reach that issue herein since no obligation to pay has arisen at this time. Such issue may be presented in subsequent proceedings.

Accordingly, this court entered its order on January 30, 1992, that the petition to enforce and compel settlement is denied, finding that no meeting of mind on the exhaustion of the underlying policy between the plaintiff and adjuster had been reached, with the provision that $40,000 would be payable if exhaustion is established.